[Civ. No. 21117. First Dist., Div. One. Jan. 31, 1964.]

Estate of ABRAHAM HIRSCHBERG, Deceased. SYZFRA PELTA et al., Plaintiffs and Appellants, v. RITA HIRSCHBERG et al., as Administratrices, etc., Defendants and Respondents.

Samuel Storey, John J. Mullane, Jr., and Rex A. Collings, Jr., for Plaintiffs and Appellants.

James O'Gara, Jr., and E. James McGuire for Defendants and Respondents.

BRAY, P. J.—Appellants Syzfra Pelta, Chana Szames and Icek Jurkiewicz appeal from the decree approving decision and report of referee and from order denying petition for removal of the administratrices. Appellant Philip Hirschberg separately appeals from both of said orders.[1]

### QUESTIONS PRESENTED

1. Was there substantial evidence to support the referee's finding and conclusion that all of the property of Abraham Hirschberg and his wife Rita was community property?

2. Did the physical separation of the personal property change the character of the property?

3. Did the court err in refusing to remove the administratrices because of Rita's interest in the estate?

4. Were the findings sufficient to support the order denying the petition to remove the administratrices?

5. Should the substitute order of denial of the petition to remove the administratrices have been granted?

### RECORD

Abraham Hirschberg, the decedent, and Rita Hirschberg were married December 9, 1933. At that time Abraham had separate assets in an amount of approximately $5,000 and Rita about $30,000. All of the assets of the spouses involved in this litigation were acquired between the marriage date and January 12, 1959. Early in 1958 Abraham became ill with cancer, an illness which subsequently proved terminal. (He had suffered a heart attack in 1952.) About the middle of November 1958, Abraham entered a hospital and remained there about 10 days. During that 10-day period Rita removed from Abraham's bedroom approximately $20,000, placing it

---

[1]Bronia Hirschberg joined in the petition for decree determining interests in the estate, but has not appealed from the decision thereon.

in a commercial bank account in her own name. She rendered no account of this money, either in the guardianship nor the probate proceedings hereinafter mentioned. At the same time she removed from Abraham's living quarters cashier's checks in a substantial amount, placing them in a safe deposit box in the names of herself and Betty Schiller, a daughter by a previous marrige. On January 6, 1959, Rita filed a petition for appointment as guardian of the person and estate of Abraham as an incompetent person, and on January 12 was appointed such guardian. The same day she obtained an order in the guardianship matter authorizing her to deposit in the bank Abraham's half interest in any community property in excess of $25,000, subject to withdrawal only with court approval. Rita then deposited in guardianship accounts approximately $239,752.14 and in her own bank accounts approximately a similar amount. This money she had taken from Abraham's bedroom while he was in the hospital. Rita did not account for the money deposited in her own account either in the guardianship or probate proceedings.[2]

January 13, the day after Rita was appointed guardian, Abraham died. On January 14 Rita was appointed special administratrix of Abraham's estate. February 16 Rita and Betty Schiller were appointed administratrices of Abraham's estate. October 15, 1959, an inventory and appraisement was filed showing value of the estate at $968,591.60. (This did not include the above mentioned moneys which Rita had deposited in her own bank account and in joint bank accounts with Betty Schiller.) December 8, 1959, Philip and Bronia Hirschberg, nephew and niece of Abraham, filed a petition for determining interest in the estate. December 22, Syzfra Pelta, Chana Szames and Icek Jurkiewicz, children of a deceased brother of Abraham, filed petition to determine heirship and to determine status of property. Thereafter the administratrices filed petition for preliminary distribution and later filed final account, report and petition for final distribution.

[2]The final account of the guardian listed ''Proceeds of bank accounts, checks, and other moneys coming into the hands'' of the guardian ''being Abraham Hirschberg's community property interest in bank accounts and checks standing in the name of A. Hirschberg or Abraham Hirschberg'' $239,752.14. There was also listed certain stocks standing in the name of Abraham Hirschberg. The decree settling the final account and discharging the guardian stated that the property remaining in the guardian's hand was as shown in the final account and had been delivered to the special administratrix of decedent's estate.

A stipulation of counsel for all parties was entered into authorizing the probate court to submit to the probate commissioner as referee all issues raised by said petitions.

On February 15, 1962, the referee's report and decision was filed. The referee found that "by virtue of the unrebutted presumption of section 164, Civil Code, and an understanding had between decedent and his spouse Rita Hirschberg, all the assets of decedent were and are community property of the parties" and "there are no separate property assets belonging to the community"; that Rita was entitled to distribution of the entire estate, and that the heirship petitions of the other parties be denied. This finding that all the property was community property expressly included the moneys which Rita had kept separately in her own bank accounts and those in her name and Betty's, which had not been reported in the estate.

March 20, 1962, the decree approving the decision and report of the referee was entered. The same day, Philip Hirschberg filed a petition for removal of the administratrices. On July 9 Philip Hirschberg moved the court to substitute a proposed order for the court's order of May 18 denying the petition for removal of administratrices. The motion was denied July 13.

1. SUFFICIENCY OF EVIDENCE.

Appellants do not challenge the referee's findings, confirmed by the trial court, that all of the property of the spouses was community property, on the ground that there was not sufficient evidence to support that finding. Rather, they contend that there was a conflict of interest between Rita and the estate because of her claim that all the property was community property and that therefore she should have produced evidence to show that at least some of the estate property was Abraham's separate property. Appellants point to no such evidence being in existence but content themselves with claiming that were it not for her interest she might have found such evidence. The administratrices contend that they produced all the evidence they were able to find as to the acquisition and character of the property of the estate.

A protracted trial was held before the referee during which nine witnesses were called, including Rita and Chana Szames, and 34 documentary exhibits introduced. An accountant, who, from 1947 until Abraham's death, kept decedent's books and made out Abraham's and Rita's income tax reports, testified that there were so many transactions in

which Abraham engaged during the approximately 25 years of the marriage that it was impossible to trace the proceeds of the various sales and transactions. In his report the referee referred to "the great period of time covered by the transactions and the monumental problem of locating, sifting and evaluating the available evidence. ..." The evidence further shows and the referee found that these separate assets were so inextricably commingled with the community property of the parties as to be unidentifiable and untraceable at the time of death; that the total amount of community income or community expense during the marriage cannot be determined either exactly or in reasonable approximation; that although all the property was held in Abraham's name there does not appear to have been any loans made on the sole basis of his personal credit.

Henry Trevor, retired president of the corporation through which a great number of Abraham's business transactions (such as collecting rents, writing insurance, acting as real estate broker) were handled from 1922, approximately 11 years before Abraham's marriage to Rita, until a few years before his death, was called as a witness. He testified to the effect that in 1929 and 1930 Abraham was "broke." The record supports the statement of the referee concerning Abraham's financial condition at the time of the marriage. "The composite picture revealed by evidence more distinguished by bulk than preciseness is that of a man whose sole assets at that time were his wits, his optimism, and the fund placed at his disposal by his wife and wealthy friends with well-justified confidence in his financial astuteness."

Appellants contend that there was a "commingling" of the actions of the attorney for the administratrices and the attorney for Rita individually, in that the former did most of the examining of the witnesses on the issue of the character of the property. However, as herein stated, appellants have failed to point out how they were injured by the administratrices' attorney doing some of the questioning rather than the attorney representing Rita individually. All the evidence that was material to that issue was admitted.

Section 164, Civil Code, provides in pertinent part: "All other real property situated in this State and all other personal property wherever situated acquired during the marriage by a married person while domiciled in this State is community property. ..."

"Even in the absence of agreement, separate property may become community property by the process of com-

mingling in such a manner to make segregation impossible, thus requiring the application of the presumption that it is community property. [Citations.]'' (*Mears* v. *Mears* (1960) 180 Cal.App.2d 484, 499 [4 Cal.Rptr. 618].) This is the situation in our case. ▇▇ The evidence supports rather than overcomes the presumption.

▇▇ Rita testified that on many occasions Abraham had told her that everything they had would be shared equally. Appellants contend that because of her interest, her testimony should be given no weight whatever. However, it was for the trier of the fact, the referee, to determine her credibility. He had the opportunity of observing her demeanor on the witness stand.

▇▇ In the years 1946 and 1947, while availing themselves of the opportunity to file separate federal and California income tax returns, the spouses reported their income and capital gains as community property, dividing them in the returns and reporting no separate property. Thereafter the spouses in their joint returns continued to report their property as community property and reported no separate property.

Abraham conducted many of his business transactions through dummies, which fact made it difficult, if not impossible, to trace many of the transactions. The spouses at no time had a joint bank account, joint safe deposit box, nor was title to property ever taken in their joint names. Apparently all business transactions were handled by Abraham, Rita not participating therein. These facts, together with Rita's previously noted removal of the cash and checks during Abraham's hospitalization in November 1958 are not sufficient as a matter of law to overcome Rita's testimony as to the oral community property agreements between her and Abraham and the presumption under section 164.

▇▇ Appellants offered in evidence before the referee certain affidavits concerning Abraham's claim of wealth in 1946 when he was endeavoring to get certain relatives admitted in this country, including a statement that he then had no dependents. So far as the issue of the character of his property is concerned the affidavits were not material, as they did not bear on that issue. Admittedly, he then had a wife, Rita, but his statement that he had no dependents would not indicate that he felt there was no community property. ▇▇ Appellants' main objection to the referee's refusal to admit evidence appears to rest on the theory that if the evidence

showed that Abraham had approximately a million dollars of assets in 1946, accumulated since 1933, it could be expected that he would accumulate more assets before his death than were found. This, of course, would be mere speculation. The referee properly refused to admit that evidence.

Between 1956 and 1958 decedent kept, in his bedroom, cash assets of nearly half a million dollars, including some checks received in 1956. As the referee stated, "It is curious that a man whose fortune had been made by continuous, rapidfire transactions which never left a dollar, his own or one entrusted to him, uninvested for a moment, should have allowed this substantial amount of liquid assets to lie fallow for two years, but he unquestionably did so. Counsel for the petitioning heirs argue that decedent chose this certainly most clumsy and unbusinesslike-means of concealing these assets from his wife, a contention difficult to take seriously in view of decedent's business experience and financial acuity; they likewise argue that he did so because this was his separate property, although if it *were* his separate property, there was no need for him to do so, since he could give it away, place it in the name of one of his numerous dummies or dispose of it by will, rather than to conceal it in the bureau drawer at home; whereas, if he believed the property to be community and wished to defeat the interest of his wife, he would have a far stronger motive for keeping the knowledge of its existence from her."

Appellants contend that their attorneys, at the proceedings before the referee, were not given cooperation by the administratrices and their attorneys in the determination of the character of the property. The record fails to show any such lack of cooperation, and other than the contention that the attorneys for the administratrices objected to the introduction of certain evidence, appellants point to no instance of lack of such cooperation. No evidence material to the issue of the character of the property was excluded. Apparently all records that were known to be in existence were presented for the consideration of the heirs' counsel.

2. TRANSMUTATION.

Appellants contend that Abraham's interest in the community property was transmuted into separate property belonging to him by action of the probate court in the guardianship of Abraham, and the actions of Rita in removing moneys and checks in an amount of approximately $495,902.02 from Abraham's bedroom while he was in the

hospital and depositing them in her own name. January 12, 1959, the day before Abraham died, Rita was appointed guardian of his person and estate. On that day the court made ''Order to Hold Funds Subject to Court Order'' which stated: ''It appearing that Abraham Hirschberg had or has in his possession community personal property of Abraham Hirschberg and Rita Hirschberg, and that Rita Hirschberg, as Guardian of the Person and Estate of Abraham Hirschberg, an Incompetent Person, intends to keep *said incompetent's interest in any community property* separate from *her interest in any community property* ... It is hereby ordered that *as to all of Abraham Hirschberg's one-half interest in any community property,* in excess of the sum of $25,000, that Rita Hirschberg, Guardian of the Person and Estate of Abraham Hirschberg, an Incompetent Person, deposit said moneys in savings accounts in any banks or trust companies, to be held in said accounts subject to withdrawal only on the order of this Court and said Guardian.'' (Italics added.) Thereupon Rita divided the community assets approximately in half, placing one half in guardianship accounts and the other half in her individual accounts. No portion of the latter was included in the guardianship proceedings nor in the inventory of the decedent's estate.

■ Appellants contend that Rita's action approved by the court in the guardianship proceeding in apportioning the assets between herself and her husband's guardianship and probate estates constituted a transmutation of the husband's interest in the community property into a separate interest. This is a non sequitur. As stated in the guardianship order permitting her to segregate the two interests, it was done for the purpose of keeping Rita's interest in the *community* property separate from the husband's. There is no determination by the guardianship court, as contended by appellants, that the husband's half so separated became his separate property. Moreover, the referee expressly found that Rita did not intend, either individually or as coadministratrix, to change the status of the community property. Nor did her failure to include her half in the administration of either estate do so. No appeal was taken from the order in the guardianship proceeding which authorized her to segregate the property. Whether the guardianship order authorizing the segregation of property was valid, as appellants contend, or invalid, as the referee found, it did not constitute a transmutation of Abraham's interest in the community property into his separate property.

Section 202, Probate Code (enacted in 1931) provides: "Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration and disposal under the provisions of division III of this code ... [Administration of Estates of Decedents]." Section 571, Probate Code, requires that "The executor or administrator must take into his possession all the estate of the decedent, real and personal. . . ." (See *Lowrey* v. *Rego* (1944) 65 Cal.App.2d 16 [149 P.2d 706].) ■ "[A] surviving wife's claim to her share of the community property is said to come to her through probate (Prob. Code, § 202) so that her claim is in privity with the estate and should be litigated therein." (*Central Bank* v. *Superior Court* (1955) 45 Cal.2d 10, 17 [285 P.2d 906].)

■ Thus, Rita's share of the community property should have been included in the administration of Abraham's estate. However, appellants are not in a position to complain, for the reason, first, that they brought no proceeding to compel the administratrices to inventory the assets withheld and did not complain until the time of the distribution of the estate, and second, and more importantly, since the court properly found all of the property of both Abraham and Rita to be community, and since the entire property goes to Rita, one-half directly as her share and the other half as heir of her husband, it should make no difference to appellants what the value of the estate was or whether it included all of the community assets or not. They would have no distributable interests in any event. Appellants' claims must stand or fall on the character of the property involved in the estate. Rita's failure to inventory the moneys she placed in her own accounts did not prejudice appellants in any way. She made no effort to conceal the fact that she had these moneys. The guardianship order showed what she had done. The referee and the probate court were fully apprised of her action, and took these moneys into consideration in determining the community character of all of the assets of the spouses. The physical separation of these assets did not constitute a change in their character.

3. ORDER DENYING PETITION TO REMOVE ADMINISTRATRICES.

The administratrices were appointed February 16, 1959. The report of the referee was filed February 15, 1962. Written opposition to the report was filed. Respondents' motion to have the court enter judgment in accord with the referee's

decision and report was heard March 8. At the hearing, appellants were granted 10 days to file points and authorities. They did not do so. On March 20 the court made and entered its decree approving the decision and report of referee. On the same day appellant Philip Hirschberg filed a petition for removal of administratrices. It is significant that no attempt was made to remove the administratrices until after they had served for over three years, the referee had determined the character of the property, and the estate was ready for distribution. The sole ground for removal alleged was that petitioner was informed and believed that the administratrices "have interests adverse and inimical to your Petitioner and the other heirs" and that "it is impossible for said Administratrices to be neutral among these heirs."

■ Section 422, Probate Code, sets out the priority of persons entitled to letters of administration. The surviving spouse, when entitled to succeed to the estate or some portion thereof, is given first preference. This right is absolute and the court has no right to refuse to appoint the survivor or to appoint another in a lower class. (See 20 Cal.Jur.2d § 128, p. 187.)

"The fact that a person nominated in a will as executor has an interest adverse to decedent's estate does not disqualify him for appointment in the absence of a statute which authorizes disqualification on that ground. [Citations.] The same rule has been applied to persons seeking to be administrators. [Citations.] An adverse interest is not one of the grounds for disqualification set forth in section 401 of the Probate Code, which specifies those persons who are not competent to serve as an executor, and therefore an interest adverse to the estate is not a proper ground for refusal to appoint a person executor. [Footnote omitted.]" (*Estate of Daigh* (1963) 59 Cal.2d 367, 368-369 [29 Cal.Rptr. 273, 379 P.2d 761].)

That interest adverse to the estate is not necessarily grounds for the removal of an administrator is shown by *Estate of Meyers* (1958) 159 Cal.App.2d 764 [324 P.2d 597]. There the reviewing court affirmed the denial of a petition to remove the administrator. There the court said (pp. 768-769): " 'Without doubt appellant intended to support the claims of his mother as well as the claims of himself and his wife to joint tenancy interests in the real property, but this fact did not warrant his removal as administrator. His inaction to assert claims on behalf of the estate against his

mother and his wife and his natural unwillingness to surrender his own claims to joint tenancy interests interfered in no manner with the prosecution of the claims of Mr. Meyers' daughters made on behalf of themselves and the estate.' It was also said therein (p. 149) that a person holding property in joint tenancy with a decedent is not 'for that reason alone unfit to act as executor or administrator of the estate of the deceased joint tenant. . . . It is a factual question depending upon the circumstances of the particular case. The law does not say that a surviving joint tenant may not act as the administrator. . . .' '' Therefore, it is clear that an administrator's pecuniary interest in an estate does not necessarily constitute a ground for removal.

While a court has the power to remove an administrator when necessary to protect the estate, an appellant seeking to reverse the action of the probate court in refusing to remove an administrator must show that the court abused its discretion. (*Estate of Palm* (1945) 68 Cal.App.2d 204, 211 [156 P.2d 62]; *Estate of Ross* (1960) 179 Cal.App.2d 765, 769 [4 Cal.Rptr. 95].)

The probate court did not abuse its discretion in denying appellant Philip Hirschberg's petition to remove the administratrices. For one thing, the estate had been entirely administered, petition for distribution was on file, and there was left practically nothing for a new administrator to do. The heirship proceedings had been completed and the order confirming the report of the referee had been made.

In appellants' opening brief they contend that the probate court should have removed the administratrices and reopened "proceedings in this matter to afford claimants the opportunity to introduce evidence without fear of obstruction from the estate and its personal representatives. . . .'' While respondents' attorneys did object to the introduction of certain evidence by appellants, some of which objections were sustained by the court, the record shows that no material evidence on the question of the character of the property was excluded. Appellants have failed to point out any prejudice in any of the court's rulings and likewise have not suggested any material evidence in addition to that already received which could be introduced if the proceedings were reopened.

In their brief filed with the referee after the taking of evidence had been concluded appellants stated that they had "learned of a master list of virtually all real properties in which decedent ever had an interest.'' This list, they stated, was in the offices of Coldwell-Banker, real estate firm, with

whom decedent had carried out a substantial portion of his business transactions. "Petitioners are now checking it through and it is expected that other properties pertinent to the issues herein will be disclosed." This list was never produced nor did appellants contend that in checking it they had found any information material to the issue before the referee. They now take the position that the administratrices failed in their duties as such, in not obtaining this list when informed of it by appellants' brief. They state: "Such master list, if investigated by the Administratrices, may very well disclose the existence of additional properties owned by decedent at the time of his death, not now inventoried in the estate." Appellants stated in their brief to the referee that they were checking the list. Surely if any properties, additional to those in the estate inventory were on the list, appellants would say so. ▇▇▇ Throughout their briefs the appellants seem to take the position that it was the duty of the administratrices to prove that the property was separate property. They overlook the fact that in view of the presumption that the property in the estate was community property, the burden of proving that it was not is on them.

Most important of all on the question of the propriety of the court's order refusing to discharge the administratrices, —the court had before it the referee's report which showed that the administratrices had in no way mismanaged the estate, and although Rita was asserting her claim that the entire estate was community property, as she had the right to do, she produced all of the existing records and in nowise hampered appellants in asserting their contentions that the property was Abraham's separate property.

Appellant Philip Hirschberg complains of the fact that the same day that the court signed the decree confirming the report of the referee it made an order setting Philip's petition for removal of administratrices for hearing. According to the record the administratrices' petition for approval of the report had been argued by respective counsel on March 8. Appellants were then given 10 days to submit a memorandum of points and authorities. This time expired on the 19th. ▇▇▇ Appellants seem to contend that before signing the confirming order the judge should have notified respective counsel that he "had reached and made his decision and what that decision was." There is no such requirement, and the court was proceeding properly when, after hearing arguments on the petition and after appellants had failed to file

their brief within the time specified, the court made its order approving the referee's report.

Apparently appellants had abandoned the idea of filing points and authorities, for instead of producing a memorandum appellant Philip Hirschberg filed a petition for removal of the administratrices. This petition asked that all proceedings in the estate be suspended until the petition could be heard. It came too late to suspend the proceedings on the referee's report which were terminated by confirmation on that day. The order setting the petition for hearing, however, did provide "That no other orders prayed for in said petition and declaration be granted until the hearing" of the petition. The record shows that the petition, although dated March 19, was not filed until the 20th. Appellants contend that on the afternoon of the 19th after the probate judge had left for the day the petition for removal and an order was presented to the assistant probate commissioner, Mr. Springer. According to him this order was for the immediate suspension of the administratrices. On the morning of the 20th he presented to the judge for signature this order and one for approval of the referee's report, and stated that appellants desired further time for filing the brief if the judge did not grant the order of suspension. The judge then pointed out that the estate had been pending approximately three years, and stated he saw no reason why the report should not be confirmed, and that he would not sign the suspension order. The judge then signed the decree approving the report and an order fixing the hearing on the removal petition, which Mr. Springer drew as the form of order presented by appellants would have required too many interlineations.

If there were any error in the failure of the judge to extend appellants' time to file their brief against the approval of the referee's report, such error was not prejudicial as appellants have set forth on this appeal all of the points and authorities they would have then presented, and as we have pointed out herein, appellants have shown no reason why the report should not have been approved.

4. SUFFICIENCY OF FINDINGS.

Citing *Estate of Dow* (1949) 91 Cal.App.2d 420, 422-423 [205 P.2d 698], *Estate of Pendell* (1932) 216 Cal. 384 [14 P.2d 506], and *Estate of Withington* (1943) 60 Cal.App.2d 105 [140 P.2d 491], holding that findings of fact are required in contested probate proceedings (an appeal from denial of petition for removal of administratrix), appellants contend

that the order denying petition for removal of administratrices is void because of lack of findings of fact. This contention, however, is answered by the findings placed in the order itself. The order provides "That said Administratrices, Rita Hirschberg and Betty Schiller, have not, in their fiduciary capacity, performed any act or omitted performance of any act subjecting them to removal under any of the removal provisions of the Probate Code; nor have said Administratrices done any act which would be detrimental to the proper administration of said estate and to the persons interested therein." The cited cases are distinguishable from the case at bench for the reason that in none of them was any finding at all made by the court, whereas here the order contained findings.

 The petition for the removal of the administratrices alleged no misconduct of the latter. It merely alleged that because the administratrices "have interests adverse and inimical to your Petitioners and the other heirs" and that administratrix Rita "is an heir claimant whose interests are in conflict," the administratrices should be dismissed. There were no allegations of fact in the petition. Thus, the findings in the order denying the petition for removal that the administratrices had not "performed any act or omitted performance of any act subjecting them to removal . . . nor have said Administratrices done any act which would be detrimental to the proper administration of said estate and to the persons interested therein" sufficiently covers the issue raised by the petition. Moreover, applicable here is the rule set forth in *Estate of Wacholder* (1946) 76 Cal.App. 2d 452, 456 [173 P.2d 359] : "Although the court made only general findings, it does not appear that appellant objected to them or requested special findings, as he had the right to do under section 634 of the Code of Civil Procedure, and he must be deemed to have waived the objection that there were no findings as to specific acts of waste, mismanagement or neglect. (*Del Ruth* v. *Del Ruth,* 75 Cal.App.2d 638 [171 P.2d 34].)"

In addition to the above quoted findings in the order denying removal, the court had before it the detailed findings of the referee concerning the acts of the administratrices, which acts, as so found, completely negatived any conduct by them which would have warranted their removal. Under the circumstances the findings upon which the order denying removal was based were sufficient.

### 5. The Substitute Order.

Appellants proposed no counterfindings but appellant Philip Hirschberg moved the court to substitute an order which in addition to denying the petition for the removal of the administratrices also denied a motion to vacate the referee's report and decision. The grounds of that motion were: "Said order is incorrect in that it fails to set forth any denial of the motion to vacate the aforesaid Referee's decision and report; and in that it fails to aver that there was no hearing on the issue of the removal of the administratrices; and in that it states findings that there are no grounds for the removal of the administratrices under the removal provisions of the Probate Code, which provisions were not in issue under the aforesaid petition to remove the administratrices ..." It is not clear what was to be gained by the adoption of the substitute order. Apparently it was intended to confirm appellant Philip Hirschberg's contention that a motion to vacate the order confirming the referee's report had been made and not acted upon by the court. No notice of motion to vacate nor written motion to vacate appears in the record. Nor is it contended that there was any such given or made. During the discussion at the hearing of the motion to remove the administratrices, Philips's counsel stated that the proper procedure before the court would be for the court to set aside its order approving the report of the referee. However, no formal request was made that the court set aside that order nor was the court asked to rule upon the suggestion. Assuming that an oral motion would give the court jurisdiction, a procedure subject to considerable doubt, no such motion was made. As the court was not requested to act there was no reason for accepting the substitute order denying a motion to vacate which never was made.

 Appellant Philip complains because his motion to substitute order was not heard by the probate judge who had heard argument on the petition, but by Judge Harold Caulfield, acting as probate judge. No objection was made to his hearing the motion. Moreover, prior to that time all appellants had appealed from both the decree approving the referee's report and the order denying the petition for removal; hence jurisdiction as to the order was no longer in the probate court.

"It has been frequently held that in a civil matter the effect of an appeal is to remove from the jurisdiction of the

trial court all questions affecting the validity of the judgment or order appealed from, and while an appeal from a judgment is pending the trial court has no power to amend or correct the same." (*Linstead* v. *Superior Court* (1936) 17 Cal.App.2d 9, 12 [61 P.2d 355]; accord: *Sacks* v. *Superior Court* (1948) 31 Cal.2d 537, 540 [190 P.2d 602].)

Appellants contend, finally, that there was no hearing on the petition for removal. The record clearly indicates the contrary. At the opening of the hearing the court stated: "[T]he matter before the Court is the request for removal, petition for removal, was it not?" While no evidence was offered there was discussion of counsel and the court (approximately 23 pages of transcript) and the court then stated that "the matter is submitted." While considerable of the discussion was concerning the order approving the report, there was also much discussion of the alleged reasons for removing the administratrices. Appellant Philip had ample opportunity had he so desired to offer anything further on the issue of removal. He cannot now complain because he did not embrace that opportunity.

The decree and order are affirmed.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied February 21, 1964, and appellants' petition for a hearing by the Supreme Court was denied March 25, 1964.