[Civ. No. 6557. Fifth Dist. May 28, 1982.]

Estate of SUSAN BUCKLEY, Deceased.
BOBBY BIBB, Petitioner and Respondent, v.
DEAN K. BUCKLEY, Objector and Appellant;
DOYLE BIBB, as Executor, etc., et al., Claimants and Respondents.

[Civ. No. 6587. Fifth Dist. May 28, 1982.]

DEAN K. BUCKLEY, as Administrator With the Will Annexed, etc.,
Plaintiff and Appellant, v.
BOBBY BIBB, Defendant and Respondent.

COUNSEL

William C. Gordon and Allan I. Shatkin for Objector and Appellant and Plaintiff and Appellant.

Michael Harrison for Petitioner and Respondent and Defendant and Respondent.

No appearance for Claimants and Respondents.

OPINION

GOMES, J.*—In this consolidated appeal, Dean K. Buckley appeals from orders of the Tulare County Superior Court vacating its issuance of letters to appellant, removing appellant as personal representative of the Estate of Susan Buckley and appointing respondent Doyle Bibb executor (5 Civ. No. 6557). Appellant also seeks reversal of the summary judgment granted to respondent Bobby Bibb by the superior court (5 Civ. No. 6587). Our resolution of the first appeal disposes of the second.

### 5 CIVIL NO. 6557—ESTATE OF BUCKLEY

On August 21, 1979, Susan Buckley died; on October 11, 1979, Susan Buckley's will was deposited with the Tulare County Superior Court. The last will of the decedent nominated her son-in-law (erroneously described therein as her son), Doyle Bibb, as the executor of her estate to serve without bond. On January 30, 1980, appellant, Dean K. Buckley and Dale B. Buckley (both sons of the deceased) filed a peti-

*Assigned by the Chairperson of the Judicial Council.

tion for probate of will and issuance of letters of administration with will annexed. On February 7, 1980, respondent Bobby Bibb, daughter of the deceased and wife of respondent, Doyle Bibb, filed an objection to the appointment of Dean Buckley and Dale Buckley as administrators with the will annexed.

On March 4, 1980, a hearing was held on appellant's petition.

On April 16, 1980, based on the March 4, 1980, hearing on the Buckleys' petition, the court granted the petitions of the Buckleys and issued an order appointing appellant Dean K. Buckley and Dale B. Buckley administrators with the will annexed.

On February 13, 1981, respondents Doyle Bibb and Bobby Bibb filed an amended creditor's claim for the sum of $11,490 against the estate of Susan Buckley. This claim was rejected by counsel for appellant Dean K. Buckley as personal representative of the estate on March 2, 1981.

On March 24, 1981, a petition to strike and vacate orders re petition for probate and issuance of letters was filed by respondent Bobby Bibb. The petition to strike and vacate orders raised numerous alleged defects in the original petition filed by Dean K. Buckley and Dale B. Buckley, as well as deficiencies in appellant's performance of his duties as personal representative. Primarily, however, the petition alleged that, "At no time herein has there been filed with the clerk of the above-entitled Court, an affidavit showing publication of Notice of Death of SUSAN BUCKLEY and of Petition to Administer Estate Number 26975 in a newspaper of general circulation in accordance with Probate Code section 333, or any other provisions of law." The petition further alleged that because Probate Code section 333, subdivision (c) provides that the court cannot hear any petition for probate or for letters until compliance with its provisions, the court lacked authority to conduct the March 4, 1980, hearing or to issue any orders in connection therewith.

On March 24, 1981, Doyle Bibb filed a petition for probate of will and for issuance of letters testamentary.

On March 27, 1981, Merle L. Buckley (a son of decedent) executed a nomination to have the court appoint Doyle Bibb as the personal representative of the estate of decedent and he joined in the petition to strike and vacate the April 16, 1980, orders for probate and issuance of

letters. On March 26, 1981, Madge Belezzuoli (a daughter of decedent) also executed a nomination of Doyle Bibb and a joinder in the petition to strike the April 16, 1980, orders. The nominations and joinders of Merle L. Buckley and Madge Belezzuoli were filed in the Tulare County Superior Court on April 8, 1981. Merle L. Buckley and Madge Belezzuoli were children of the decedent who were named as beneficiaries in the last will of decedent.

On April 8, 1981, a hearing was held on the petition to strike and vacate orders and the petition for probate and issuance of letters on behalf of Doyle Bibb. After argument by both counsel the jurisdiction issue was taken under submission and set for further hearing on April 22, 1981.

On April 21, 1981, Judge Conn issued a document entitled "Ruling on Submitted Matter," denying respondent's motion on the ground that respondent Bobby Bibb, by objection to appellant's appointment, made a general appearance and waived any jurisdictional defect. On April 21, 1981, attorneys for appellant Dean K. Buckley filed an ex parte motion to continue the April 22, 1981, hearing.

On April 22, 1981 (the date to which the probate department had continued the April 8, 1981, hearings on the petition to strike/vacate and the petition for probate and issuance of letters to Doyle Bibb), Bobby Bibb, Doyle Bibb, Merle Buckley and Madge Belezzuoli appeared. At that time, Madge Belezzuoli and Merle Buckley caused to be filed with the court a request for a completion of the court's April 21, 1981, "Ruling on Submitted Matter" re jurisdictional defect as to those joining parties. At the hearing, the court ordered the matter resubmitted as to the issue of jurisdiction and it continued the hearing to May 5, 1981, for a further hearing; with reference to the jurisdictional issue, counsel were permitted to file supplemental points and authorities by May 1, 1981.

At the May 5, 1981, hearing, the court found there was a proper objection made to jurisdiction and a failure to publish notice of death under Probate Code section 333; based on such finding, the probate court vacated the order for probate and removed the Buckleys as personal representatives of the estate of decedent. At the hearing the probate court appointed Doyle Bibb as the executor of the estate of decedent and the court set bond in the amount of $2,000. Later that day Doyle Bibb filed the $2,000 bond with the clerk of the court.

On May 20, 1981, counsel for Dean K. Buckley filed a motion to vacate the orders of May 5, 1981, based on grounds of extrinsic fraud, alleging that neither appellant nor his attorney had received notice of the May 5, 1981, hearing.

Following a hearing on said motion, the court on June 11, 1981, issued its ruling. The court found no basis for vacating the May 5, 1981, orders removing the Buckleys as personal representatives or appointing the nominated executor, Doyle Bibb, as the personal representative of the estate. The court also found that appellant's motion for a continuance of the April 22, 1981, hearing date had been untimely filed and had not been granted. Because it found that notice of the May 5, 1981, hearing had not been mailed to appellant's counsel, the court stated that it would treat appellant's motion to vacate the orders as being a motion for reconsideration of the May 5, 1981, order and it granted appellant's counsel until June 22, 1981, to file additional authorities that counsel could have filed pursuant to the order of April 22, 1981.

On June 18, 1981, appellant filed an additional brief in opposition to the petition to vacate orders of April 16, 1980, and orders of May 5, 1981.

On June 22, 1981, the probate department denied appellant's motion for reconsideration. The court determined that the previous orders of the court should remain in effect. A timely notice of appeal followed.

The central issues raised by appeal are twofold and so interrelated they must be considered together.

 Stated simply, appellant argues that Probate Code section 302 precluded a collateral attack to the probate court's issuance of letters to appellant founded on noncompliance with Probate Code section 333. Thus, analysis of both sections is necessary.

Probate Code section 302 provides: "In the absence of fraud in its procurement, an order of the superior court granting letters, when it becomes final, is a conclusive determination of the jurisdiction of the court (except when based upon the erroneous assumption of death), and cannot be collaterally attacked."

 A probate proceeding is essentially an in rem proceeding, in which the decedent's assets within the state constitute the res. (*Abels* v.

*Frey* (1932) 126 Cal.App. 48, 53 [14 P.2d 594]; (Cal. Decedent Estate Administration (Cont.Ed.Bar 1971) § 5.1, p. 186).)

■ "The superior court sitting in probate has only those powers which are granted by statute and such incidental powers, legal and equitable, as enable it to exercise the powers granted. [Citations.]" (*Estate of Muhammad* (1971) 16 Cal.App.3d 726, 731 [94 Cal.Rptr. 856].) Thus, it has been said that "the jurisdiction and powers of the Probate Court are wholly *statutory*. It is in this sense that it is sometimes called a court of limited jurisdiction, since it must look to express statutes for its jurisdiction and procedure. [Citations.]" (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 233, p. 5741.) "[T]he decrees of the probate court in matters which . . . are clearly within its statutory grant of jurisdiction, have the same effect, and are supported by the same presumptions on collateral attack, as the judgments of a court of general jurisdiction." (*Estate of Keet* (1940) 15 Cal.2d 328, 335 [100 P.2d 1045]; see, Witkin, *supra*, at § 234, p. 5742, and cases there cited.)

Probate Code section 301 sets forth the basis of jurisdiction or the "jurisdictional facts" necessary for commencement of the probate proceeding.[1] "Before a California superior court may take jurisdiction of a decedent's estate there must have been an actual death (Prob. C. § 302) and the decedent must have been a resident of California [in the county of administration] or have left property here (Prob. C. § 301)." (1 Cal. Decedent Estate Administration, *supra*, at §§ 5.2, 5.3, p. 187.)

However, "only death is truly jurisdictional, in the sense that a judgment is void and susceptible to collateral attack at any time if predicated on an erroneous finding of death. [Prob. Code, § 302] . . .

---

[1]Probate Code section 301 provides in pertinent part as follows: "Wills must be proved, and letters testamentary or of administration granted and administration of estates of decedents had, in the superior court:

"(1) Of the county of which the decedent was a resident at the time of his death, wherever he may have died;

"(2) Of the county in which the decedent died, leaving estate therein, he not being a resident of the state;

"(3) Of any county in which he leaves estate, the decedent not being a resident of the state at the time of his death, and having died out of the state or without leaving estate in the county in which he died; in either of which cases, when the estate is in more than one county, the superior court of the county in which a petition for letters testamentary or of administration is first filed has exclusive jurisdiction of the administration of the estate."

The other elements, residence and existence of assets, are *mandatory precedent facts*. Findings of residence or assets in the county may be vacated or set aside only on direct attack within the time for appeal or for contest.... Unless vacated or set aside on direct attack, for all purposes of administration of the decedent's estate, findings of jurisdictional facts of residence on which the order of the court is made (even though erroneous) are final for all subsequent stages of administration." (1 Cal. Decedent Estate Administration, *supra*, p. 187, citing Prob. Code, § 302; *Estate of Robinson* (1942) 19 Cal.2d 534 [121 P.2d 734]; *Security-First Nat. Bk. v. Superior Court* (1934) 1 Cal.2d 749 [37 P.2d 69]; *Estate of Barton* (1925) 196 Cal. 508[238 P. 681].) As Witkin states: "Except as to the basic element of death ..., the court in which the proceeding is commenced may determine the jurisdictional facts, and in the absence of fraud that determination in a final order granting letters is *conclusive*. Hence, even though the determination of *residence* is later shown to be erroneous, it cannot be collaterally attacked. ([Prob. Code, §] 302, codifying rule of *Holabird v. Superior Court* (1929) 101 [Cal.App.] 49 ...; see also *Estate of Sankey* (1926) 199 [Cal.] 391, 399 ...; *Jordan v. Clausen* (1936) 13 [Cal.App.] 2d 16, 19 ....)

"The same is true of the determination that *property was left in the county*. [Citations.] ... Where all the parties have notice and an opportunity to appear and contest, the issuance of letters is binding, even though it may later develop that no property was left in the county, or that an original probate proceeding was already pending outside the state. [Citation.]" (7 Witkin, Summary of Cal. Law, *supra*, § 240, pp. 5746-5747.)

After expiration of the time for direct attack of an order of the probate court, the order is binding upon the whole world, if it is not void for lack of jurisdiction. (See *Estate of Callnon* (1969) 70 Cal.2d 150 [74 Cal.Rptr 250, 449 P.2d 186]; *Estate of Wise* (1949) 34 Cal.2d 376, 383-385 [210 P.2d 497]; *Abels v. Frey, supra*, 126 Cal.App. 48, 53; 1 Cal. Decedent Administration, *supra*, at § 5.29, p. 201.)

However, the term "jurisdiction" has several meanings with regard to the validity of judgments and orders. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 287-291 [109 P.2d 942, 132 A.L.R. 715].) "It is now recognized that the term 'jurisdictional' does not have a single, fixed meaning, but has different meanings in different situations." (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 1, p. 526.)

■ Where a statute relates to jurisdiction in the "fundamental" sense, that is to authority over the subject matter or the parties, disregard of the statute may render the judgment void and subject to collateral attack. If the court already possesses fundamental jurisdiction, the order, once final, may not be collaterally attacked, despite violation of a statute not relating to fundamental jurisdiction. (See, e.g., *Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715 [285 P.2d 636]; *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 119-122 [101 Cal.Rptr. 745, 496 P.2d 817]; *Estate of Gardiner* (1941) 45 Cal.App.2d 559 [114 P.2d 643].)

■ ■■■ The initial question confronting this court is whether failure to comply with the publication requirements of Probate Code section 333 falls within the prohibition of Probate Code section 302 regarding collateral attacks on final orders of the probate court conclusively determining its "jurisdiction."[2]

The commissioners' comments to section 302, consist of citations to *In re Griffith* (1890) 84 Cal. 107 [23 P. 528, 24 P.381], and *Holabird* v. *Superior Court* (1929) 101 Cal.App. 49 [281 P. 108]. (See, Code Commissioners' Notes to Prob. Code, § 302, 52 West's Ann. Prob. Code (1956 ed.) p. 600.) Both cases involved collateral attacks upon the issuance of letters on the ground that the deceased did not reside in the county, as stated in the petition to the court. Both courts refused to allow the collateral attacks. As the *Holabird* court stated: "It is the settled law of this state that an order granting letters of administration is an adjudication of the fact of residence of the deceased in the county over which the court has jurisdiction, and it is binding upon the whole world, unless vacated or set aside on direct attack, for all the purposes of the administration of the estate of the deceased. [Citations.] While residence is jurisdictional, it is one of those jurisdictional facts which

---

[2]Preliminarily, respondent contends that section 302 is inapplicable as the motion to vacate was, in this case, a direct and not a collateral attack.

A direct attack is an attack on a judgment in the action in which it was rendered and the motion to vacate is one of the established methods of direct attack. (5 Witkin, Cal. Procedure, *supra*, Attack On Judgment In The Trial Court, §§ 1, 2, pp. 3584-3585.) However, a motion to vacate or set aside a judgment after the statutory time has elapsed for direct attack by a motion is a collateral attack. (*Id.*, at § 6, p. 3588.) Similarly, once the time for appeal has expired, the attack is no longer direct, but is in fact a collateral attack. (*Security-First Nat. Bk.* v. *Superior Court, supra,* 1 Cal.2d 749, 755; see *Estate of Nielsen* (1963) 217 Cal.App.2d 147, 149-150 [31 Cal.Rptr. 424].) The attack here is collateral.

the court must determine from evidence produced before it and when determined, it cannot be attacked collaterally. [Citation.]" (*Id.*, at p. 52.)

Although we are mindful of the desirability of finality regarding title to property distributed through probate, we find no authority supporting the proposition that section 302, or cases to the same effect, were intended to apply beyond those specific jurisdictional prerequisites required to invoke the probate jurisdiction of the court (and set forth in § 301), to preclude collateral attack upon orders which are jurisdictionally deficient in the "fundamental" sense for other reasons and which deficiency appears on the face of the order.

Section 302 appears to apply only to the court's determination that the jurisdictional prerequisites of section 301 have been met.

Probate Code section 333 requires publication of a notice of death and petition to administer the estate (including notice to creditors) in conjunction with filing of a petition for probate or for issuance of letters of administration. Subdivision (c) of Probate Code section 333 provides as follows: "No petition filed pursuant to Section 326 [petition for probate] or 440 [petition for letters of administration] *may be heard* by the court unless an affidavit showing due publication of notice has been filed with the clerk upon completion of the publication. Such affidavit shall contain a copy of the notice, and state the date of its first publication." (Italics added.)

Section 333 replaces portions of Probate Code sections 700-702 which required that the administrator or the executor publish notice to creditors "promptly after letters are issued." (Prob. Code, § 700, added by Stats. 1931 ch. 281, § 700, p. 628, amend. by Stats. 1968, ch. 81, § 1, p. 238, Stats. 1979, ch. 731, § 14, p. 2559.)

Compliance with former Probate Code sections 700-702 was not a prerequisite to the court's obtaining subject matter jurisdiction over the probate proceedings. If the required notice was not promptly published or the affidavit of publication was not filed, creditors were not prevented from filing claims after the four-month cutoff which would apply in the case of compliance with the statute. In addition, the court was required to revoke the letters of the personal representative and to appoint some other person in his stead (former Prob. Code, § 701, repealed by

Stats. 1979, ch. 731, §§ 15, 16, p. 2560, eff. Jan. 1, 1980). Moreover, the statute provided that "final distribution shall not be decreed unless it is shown that notice to creditors has been duly given." (Former Prob. Code, § 702, repealed by Stats. 1979, ch. 731, §§ 15, 16, p. 2560, eff. Jan. 1, 1980.) However, in adding section 333 to the Probate Code, the Legislature eliminated the penalty provisions explicit in former Probate Code sections 701 and 702 and instead provided that the court did not have the power to hear the petition until compliance with section 333.

As stated heretofore, the jurisdictional facts necessary for commencement of a probate proceeding are set forth in Probate Code section 301. However, the Legislature has the power to condition subject matter jurisdiction upon compliance with additional requirements. In Probate Code section 333 it appears that the Legislature has further limited the subject matter jurisdiction of the court. Subject matter jurisdiction has been referred to as the "power to hear or determine the case." (See, *Abelleira* v. *District Court of Appeal, supra*, 17 Cal.2d 280, 288.) ▮ "Fundamental jurisdiction refers to the authority of the court *to hear a case and bind the parties* by any lawful judgment or order. Nonfundamental jurisdiction refers to the authority of the court to make a particular judgment or order." (Cal. Decedent Estate Administration, *supra* (supp., 1979), §§ 5.29-5.30, p. 79.)

▮ The Legislature did not merely require that publication take place prior to the court's hearing, as it could have done. Instead, the Legislature took away the court's power to hear the matter where the statutory requirements are not met.

The plain language of the statute clearly goes to the power of the court to hear and determine any matter involved in a petition for probate or for issuance of letters. Thus, the Legislature has, apparently, converted a requirement which at one time was merely mandatory into a limit on the court's subject matter jurisdiction.

This legislative choice makes sense in the probate context as the probate proceeding is in rem, in that it conclusively determines the interests of all persons in certain property. (1 Witkin, Cal. Procedure, *supra*, at § 148, pp. 674-675, and cases there cited; Rest., Judgments, Introductory Note, p. 6, §§ 2, 32, pp. 12-14, 127-133; Rest.2d Judgments, § 6, p. 73.)

Published notice is vital to establish in rem jurisdiction. While Probate Code section 328 recognizes concerns regarding personal jurisdiction over individuals named in the will and requires personal notice by mail with regard to those individuals, such personal notice to named beneficiaries is no substitute for compliance with the statutory requirements of Probate Code section 333.[3] Notice by publication is not necessarily a requirement of subject matter jurisdiction (witness the prior creditors' notice sections, which, although requiring publication of notice, did not divest the court of power to hear the petitions in the event such publication was not made). However, the Legislature has apparently determined that because the court seeks to bind the world by its judgment, the publication requirement is vital. Therefore, the Legislature has further limited the court's subject matter jurisdiction by requiring proof of compliance with the statute before the court can hear and act upon the petition.

The Legislature indicated its intent that section 333 impose another limit upon the subject matter jurisdiction of the probate court when it enacted Probate Code section 334. Recognizing the possibility of imperfect compliance with Probate Code section 333, Probate Code section 334 provides in pertinent part that: "to prevent a minor error in publication *from totally invalidating what would otherwise be a proper proceeding*, the Legislature further finds and declares that notice published in a good faith attempt to comply with Section 333 shall be sufficient to provide notice . . . if the court expressly finds that such notice was published in a newspaper of general circulation published within the county and widely circulated . . . in substantial compliance with Section 333." (Italics added.)

Appellant contends that Probate Code section 334 shows that the Legislature has expressed flexibility regarding the notice of requirement of Probate Code section 333. In the instant case where no publication whatsoever occurred and where the error complained of is not the type of minor error in publication referred to in Probate Code section 334, appellant's argument is not convincing.

Because it appears to this court that the defect in failing to publish notice pursuant to Probate Code section 333 is one of jurisdiction in a fundamental sense (i.e., subject matter jurisdiction), if the defect ap-

---

[3]There is no contention in this case by respondents that the notice requirement of Probate Code section 328 was not met.

pears on the face of the order, the order is subject to collateral attack. (See, *Pacific Mut. Life Ins. Co.* v. *McConnell, supra,* 44 Cal.2d 715, 725-726; *Farley* v. *Farley* (1964) 227 Cal.App.2d 1, 8 [38 Cal.Rptr. 357]; 1 Witkin, Cal. Procedure, *supra,* at § 228, p. 763.)

■ An order "will not be open to collateral attack for lack of jurisdiction unless the record affirmatively shows that the court transgressed its statutory power to render the decree in question. [Citations.] The record is the judgment roll, and upon collateral attack it is the only evidence that can be considered in determining the question of jurisdiction. [Citations.]" (*Estate of Wise, supra,* 34 Cal.2d at p. 382.)[4]

■ The clerk's transcript in this case contains those documents comprising the judgment roll and there is no proof of publication or affidavit or any other document or instrument which would show compliance with Probate Code section 333. Moreover, appellant has not contended that publication pursuant to Probate Code section 333 in fact occurred. Therefore, the failure of appellant to publish notice or to file the required affidavit appears from inspection of the judgment roll and thus the order is void on its face. Because we determine that the requirement of publication pursuant to Probate Code ·section 333 is jurisdictional in the sense that it goes to the court's power to hear the cause and thus affects the subject matter jurisdiction of the court over the action, respondents were not precluded from collaterally attacking the order issuing letters to appellant.

■ Appellant next argues that a general appearance in probate proceedings waives any defect such as lack of notice and that respondent Bobby Bibb waived any defect in failure to comply with Probate Code

---

[4]The items comprising the judgment roll in a probate action are defined in Probate Code section 1242 in pertinent part as follows: "The following papers, without being attached together, shall constitute the judgment roll in the proceedings mentioned in this code:

"1. The petition or application or contest or report or account which initiates a particular proceeding; any order directing notice to be given of the hearing thereof; *any notice of the hearing thereof,* or any order to show cause made thereon, *with the affidavits showing such publication,* posting or mailing of the notice or order *as may be required by law* or the order of the court; the citation, in case no answer or written opposition is filed by a party entitled, by law or order of court, to notice of the proceeding by citation, with the affidavit or proof of service thereof, and if service of such citation is made by publication, the affidavit for such publication and the order directing publication; any finding of the court or referee therein; the order or judgment made or rendered therein; and the letters testamentary or of administration, if any." (Italics added.)

section 333 by opposing appellant's petition for issuance of letters. Appellant also argues that other respondents, having received the same notice as respondent Bibb, had the same opportunity to appear and contest the issuance of letters in the initial proceeding and that they therefore also waived any defect.

It is well established that subject matter jurisdiction, as distinct from jurisdiction of the parties, cannot be conferred by consent, waiver, or estoppel. *In re Marriage of Ben-Yehoshua* (1979) 91 Cal.App.3d 259, 263 [154 Cal.Rptr. 80]; *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 773-776 [197 Cal.Rptr. 739] [contrasting the rule that jurisdiction of the person may be conferred by consent] (disapproved on other grounds in *Robinson* v. *Superior Court* (1950) 35 Cal.2d 379, 386 [218 P.2d 10]); *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668] ["While estoppel may operate to confer jurisdiction over the *parties* to a controversy, jurisdiction over the subject matter cannot be conferred by consent, waiver or estoppel."]; see *Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457, 464-465, fn. 3 [137 Cal.Rptr. 348]; 1 Witkin, Cal. Procedure, *supra*, § 10, pp. 534-536).[5]

■ Appellant contends that respondent's motion to vacate was barred by Probate Code section 384 and by the provisions of Code of Civil Procedure section 473. Probate Code section 384 provides in pertinent part as follows: "If no person contests the validity of a will or of the probate thereof within the time specified in this article [120 days], the probate of the will is conclusive; saving to infants and persons of unsound mind who were not made parties to the proceedings a like period of four months after their respective disabilities are removed."

Code of Civil Procedure section 473 provides a six-month statute of limitations for actions to set aside "a judgment, order, or other proceeding taken against [a party] through his or her mistake, inadvertence, surprise or excusable neglect." Code of Civil Procedure section 473 also

---

[5]The cases cited by appellant in favor of his waiver proposition are not applicable to the present case insofar as they relate primarily to waivers of personal jurisdiction by a general appearance. (See *Estate of Poder* (1969) 274 Cal.App.2d 786, 791 [79 Cal.Rptr. 484].)

*Estate of Robinson* (1942) 19 Cal.2d 534, 538-539 [121 P.2d 734], also cited by appellant, involved the issue discussed heretofore as to the conclusiveness of the court's determination of one of the jurisdictional facts (in that case the presence of property in the county at the time of decedent's death). Nothing in *Robinson* is inconsistent with the rule that a general appearance will not waive a defect in subject matter jurisdiction.

provides that "The court may . . . on motion of either party after notice to the other party, set aside any void judgment or order." There is no statute of limitations provided in section 473 for motions to set aside void orders and it appears that section 473 is not relevant to the instant action.

Moreover, Probate Code section 384 does not bar respondent's motion to vacate an order void because the court initially lacked subject matter jurisdiction. As stated in *Estate of Poder* (1969) 274 Cal.App. 2d 786 [79 Cal.Rptr. 484]: "Respondents contend that relief was nevertheless properly denied because appellants failed to attack the order admitting the will to probate within six months, as allowed by Probate Code sections 380 and 384. Appellants correctly respond that they are not at this point will contestants; they assert the basic jurisdictional invalidity of the order admitting the will to probate. Where the record on its face discloses a want of jurisdiction, a judgment or order may be attacked *at any time* on this ground; statutes of limitation do not protect a void judgment. [Citations.] . . . Because appellants seek to have the order admitting the purported will to probate declared void for lack of jurisdiction rather than merely contesting the correctness of that order or the validity of the will, sections 380 and 384 of the Probate Code do not bar their motion or this appeal." (*Id.*, at pp. 790-791.)[6]

Because respondents at the trial court level were not merely contesting the correctness of the order admitting the will to probate or contesting the validity of the will itself, but were rather seeking to have the order declared void and to vacate the issuance of letters for lack of jurisdiction, Probate Code section 384 is inapplicable.

■ Appellant also contends that respondent's petition below was barred by the equitable doctrine of laches since one year had transpired between the issuance of letters and the filing of the petition to vacate.

"Delay is not a bar unless it works to the *disadvantage or prejudice* of other parties. [Citations.]" (7 Witkin, Summary of Cal. Law, *supra*, Equity, § 15, p. 5240.)

---

[6]Although the court's conclusion that statutes of limitation do not protect void judgments may no longer be valid where the invalidity asserted is that the act was in excess of jurisdiction because it violated a statutory requirement which did not go to "fundamental" jurisdiction, (see, e.g., *Pacific Mut. Life Ins. Co.* v. *McConnell, supra*, 44 Cal.2d 715), the limitations period of Probate Code section 384 would not apply to a case where the defect asserted is that of "fundamental" subject matter jurisdiction or personal jurisdiction.

In the instant case appellant has neither asserted, nor does the record disclose, facts constituting disadvantage or prejudice to appellant or others arising from the delay in respondents' presentation of their motion to vacate. Moreover, there is no evidence that the delay itself was unreasonable.

Furthermore, in a case where the defect is one that goes to an absence of subject matter jurisdiction and where even the violation of a specific statute of limitations would not be sufficient to bar a collateral attack on an order void for lack of subject matter jurisdiction, the doctrine of laches should certainly not be held to preclude such an attack.

 Appellant contends that the application of Probate Code section 333, which requires proof of publication of notice of death and of intention to administer the estate as a condition precedent to the court's power to conduct the hearing on the probate and the issuance of letters, constitutes a retroactive application of the statute. He argues that because decedent died on August 21, 1979, and decedent's will was filed with the court on October 11, 1979, before the effective date of the statute (Jan. 1, 1980) application of the statute in the instant case would be in effect a retroactive application and would be contrary to considerations of fairness and public policy. Appellant also argues that respondents, in the instant case, were given actual notice of the probate proceedings, which was superior to the required published notice.

It is clear from the discussion heretofore that actual notice to respondents could have no effect upon the invalidity of the order issuing the letters and admitting the will to probate where the court lacked the subject matter jurisdiction to make the order. The quality of the notice is not at issue, rather, it is the court's ability to make any order whatsoever absent compliance with the statutory requirements.

Appellant appears to misconstrue the application of the statute when he contends that the same operates retroactively. The legislation enacting section 333 provided that, "The provisions of this bill shall apply only to *petitions for probate* or *letters of administration filed* on or after January 1, 1980." (Stats. 1979, ch. 731, § 30, p. 2564, italics added.)

In the instant case the record shows that decedent died on August 21, 1979; decedent's will was presented or delivered to the clerk of the court on October 11, 1979. The probate proceedings were instituted by

the petition filed by appellant on January 30, 1980, and dated January 10, 1980. The hearing on the probate petition was held on March 4, 1980.

Therefore, it is clear from a review of the relevant dates that the statute is not being applied retroactively, but is only being applied prospectively. In the instant case the petition was filed 30 days after the effective date of the statute.

Appellant contends, relying upon *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652], that notice by mail is superior to published notice. *Mullane* established that published notice is violative of due process as to known beneficiaries whose whereabouts are also known. He argues that because respondents apparently received notice by mail pursuant to Probate Code section 328, compliance with Probate Code section 333 was not required.

This contention has already been discussed above. In brief, it appears that the purposes of Probate Code section 328 and Probate Code section 333 are not the same. Probate Code section 328 complies with the *Mullane* requirement of mailed notice to known beneficiaries. Probate Code section 333 applies to give notice to the world, in addition to providing notice to known beneficiaries and compliance therewith is required in order to allow the court to obtain in rem jurisdiction in the action. Having determined that compliance with section 333 is required in order to give the court subject matter jurisdiction, the fact that it may have obtained personal jurisdiction over respondents by virtue of compliance with Probate Code section 328 is irrelevant.

■ Appellant contends that respondent Doyle Bibb had actual notice of the death of decedent and actual notice of the application of appellant for the issuance of letters. Appellant contends that Probate Code sections 324 and 453 preclude the court from issuing letters to Doyle Bibb on the grounds that he has lost his right to letters of administration pursuant to the provisions of those Probate Code sections.

Probate Code section 324 provides: "If the person named in a will as executor, for 30 days after he has knowledge of the death of the testator and that he is named as executor, fails to petition the proper court for the probate of the will and that letters testamentary be issued to him, he *may* be held to have renounced his right to letters, and the court *may* appoint any other competent person administrator, unless good cause for delay is shown." (Italics added.)

Probate Code section 453 provides: "The court, in its discretion, *may* refuse to grant letters of administration as provided in this article to any person or to the nominee of any person who had actual notice of the first application and an opportunity to contest the same." (Italics added.)

Initially, it does not appear that Probate Code section 453 is applicable in the present case, as it relates to appointment of administrators in cases where the decedent died intestate. (See Prob. Code, §§ 440, 443.)

In the instant case the court determined, after vacating its letters issued to appellant, that respondent Bibb had complied with the requirements necessary to allow the court to issue letters to him.

As the court stated in the case, *Estate of Martin* (1939) 31 Cal.App. 2d 501, 508 [88 P.2d 234], Probate Code section 324 is discretionary and not mandatory; (see *Estate of Deutsch* (1957) 156 Cal.App.2d 57 [318 P.2d 847]). Although Doyle Bibb may have renounced his *right* to letters as the named executor in the will, the court still had the authority and discretion to issue letters to him upon his filing of a petition which complied with the Probate Code and the record discloses no abuse of discretion in so doing.

■ Although appellant does not specifically argue that his failure to obtain notice of the May 5, 1981, hearing date requires reversal of a court's order vacating the initial issuance of letters to appellant and granting of letters to respondent Doyle Bibb, appellant does point out in the conclusion to his brief that he did not receive notice of the May 5, 1981, hearing date and was not present at that hearing. Appellant's counsel urges no *legal* reason that would support a reversal of the probate court's orders issued in favor of respondents on that ground, and we find none.

Because the trial court determined that the April 21, 1981, motion for a continuance was untimely filed by appellant and had not been granted, its consideration of the jurisdictional issue at the April 22, 1981, hearing and its continuance of that hearing to May 5, 1981, was proper. Moreover, having been apprised of appellant's contention that he had not received notice of the continuance, the court treated the matter as a motion for reconsideration and allowed appellant additional time to file points and authorities. It therefore appears that appellant has suffered no prejudice whatsoever as a result of its failure to obtain notice of the May 5, 1981, hearing.

Appellant infers that the probate court abused its discretion in appointing respondent Doyle Bibb executor. Respondent cites no legal authority in support of this proposition. He relies only upon the following statement contained in respondent Bobby Bibb's original petition to strike and vacate orders re petition for probate and issuance of letters: "In view of DOYLE BIBB's marital relationship with BOBBY BIBB and the presentation and filing of a Creditor's Claim by DOYLE BIBB, if the above-entitled Court feels that DOYLE BIBB should not be the personal representative of the estate because of interest or bias, petitioner requests that the Court appoint as the personal representative of the Estate of SUSAN BUCKLEY, such person as is nominated by said DOYLE BIBB; that if the Court is not inclined to appoint as the personal representative the nominee of DOYLE BIBB, the Court appoint a neutral, non-interested party or entity, including, but not limited to, the consideration of the public administrator."

Clearly, the foregoing statement contained in the petition to vacate orders does not amount to an admission that respondent Doyle Bibb is not qualified to act as executor or that respondent Bibb has any interest or bias which would preclude his appointment as a personal representative. The statement is framed in the alternative, requesting that only if the court believes that Bibb is not qualified, it should appoint a neutral party executor, and not appellant Buckley.

Initially, it is important to point out that appellant did not raise this contention below at the probate court level. Nothing appears in the record to indicate that appellant ever requested that the court refuse to appoint respondent Doyle Bibb as executor on the ground that he had an interest or bias which would preclude his appointment.

Moreover, it appears that the court did properly exercise its discretion in appointing respondent Doyle Bibb executor, despite the fact that he was married to a beneficiary of the estate and despite the fact that he had filed a creditor's claim.

"The fact that a person nominated in a will as executor has an interest adverse to decedent's estate does not disqualify him for appointment in the absence of a statute which authorizes disqualification on that ground. [Citations.] . . . an adverse interest is not one of the grounds of disqualification set forth in section 401 of the Probate Code, which specifies those persons who are not competent to serve as an executor,

and therefore an interest adverse to the estate is not a proper ground for refusal to appoint a person executor.

"A court, of course, has the power to remove an executor when necessary to protect the estate, and the fact that a person having an adverse interest was appointed executor does not mean he is free to advance his self-interest at the expense of the estate. [Citations.]" (*Estate of Daigh* (1963) 59 Cal.2d 367, 368-369, fn. omitted [29 Cal.Rptr. 273, 379 P.2d 761]; see *Estate of Hirschberg* (1964) 224 Cal.App.2d 449, 465 [36 Cal.Rptr. 661].)

Therefore, it appears that the probate court did not abuse its discretion in appointing Doyle Bibb as executor.

### 5 CIVIL 6587—BUCKLEY V. BIBB

Because our decision in action 5 Civil No. 6557 disposes of the appeal in 5 Civil No. 6587 we shall only briefly summarize the facts of this appeal.

On January 27, 1981, plaintiff filed a "first amended complaint to impress constructive trust on real property obtained through fraud and for order for reconveyance; for fraud" in his alleged capacity "as the personal representative of the Estate of Susan Buckley, deceased."

After further proceedings, on March 20, 1981, a cross-complaint was filed by Doyle Bibb and Bobby Bibb, husband and wife. On May 18, 1981, respondent Bobby Bibb filed a notice of motion for summary judgment or for adjudication of issues without substantial controversy. Said motion concluded that, "Based on the lack of capacity of Dean K. Buckley to sue as the personal representative of the estate, the motion for summary judgment must be granted."

On June 3, 1981, a hearing was held on the summary judgment motion. The motion was based on respondent's contention that appellant was not the personal representative of the estate of Susan Buckley on whose behalf the litigation had been commenced. Counsel for respondent Bobby Bibb relied on the May 5, 1981, orders that had been issued by Judge Conn of the probate department wherein he had vacated,

struck, and removed respondent Dean K. Buckley and Dale B. Buckley, and each of them, as personal representatives of the estate of Susan Buckley on the basis that they had been appointed pursuant to a hearing that had occurred without proof of publication of the notice of death. The clerk's transcript reflects that arguments were made by counsel. At that point there was a discussion between court and counsel with regard to the probate matter. The following notation appears in the clerk's transcript: "Counsel stipulated [i]n event Judge Conn reconsiders previous order and reinstates plaintiff as Administrator then the motion for summary judgment will be denied. If he refuses to change previous order motion for summary judgment will be granted. [¶] Order: Pursuant to stipulation."

On June 22, 1981, the probate court issued its minute order denying appellant's motion for reconsideration and stating that the previous orders of the court vacating the issuance of letters to appellant and appointing respondent Doyle Bibb executor should remain in effect.

On June 24, 1981, respondent Bobby Bibb filed with the court in the summary judgment action a document entitled "occurance of condition re court's June 8 [sic], 1981, conditional grant of motion for summary judgment." In that document she informed the court of the probate court's refusal to reconsider its prior order vacating its issuance of letters to appellant and respondent requested the court to take judicial notice of the June 8, 1981, June 11, 1981, and June 22, 1981, minute orders of the probate court.

On July 2, 1981, the court issued its order for entry of summary judgment. Said order granted summary judgment in favor of respondent Bobby Bibb on both the complaint and cross-complaint.

Appellant contends that if the probate court erred in vacating its issuance of letters and removing respondent as personal representative, we must reverse the summary judgment as well.

Because we have held in consolidated case 5 Civil No. 6557 that the trial court did not err in vacating its issuance of letters to appellant, and in issuing letters to respondent Doyle Bibb, there can be no error in Judge Kim's grant of summary judgment to respondent Bobby Bibb. Appellant at the time of the summary judgment motion was not the duly authorized representative of the estate of Susan Buckley.

The judgment is affirmed.

Franson, Acting P. J., and Andreen, J., concurred.